IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-213

 No. COA21-43

 Filed 5 April 2022

 Mecklenburg County, No. 17 CRS 206200

 STATE OF NORTH CAROLINA,

 v.

 JAIME SUZANNE BOWEN, Defendant.

 Appeal by Defendant from judgment entered 24 September 2019 by Judge

 George Cooper Bell in Mecklenburg County Superior Court. Heard in the Court of

 Appeals 6 October 2021.

 Attorney General Joshua H. Stein, by Associate Attorney General Brian M.
 Miller, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron
 Thomas Johnson, for Defendant-Appellant.

 WOOD, Judge.

¶1 Jaime Suzanne Bowen (“Defendant”) appeals from a judgment entered

 following her conviction of extortion. On appeal, Defendant argues the First

 Amendment to the United States Constitution requires the word “threat” in N.C.

 Gen. Stat. § 14-118.4 to be construed in accordance with the term “true threat”; and

 as such, the evidence was insufficient to show she committed a true threat. After a
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 careful review of the record and applicable law, we affirm the judgment of the trial

 court.

 I. Factual and Procedural Background

¶2 In 2011, Steven Nason (“Nason”) visited Seeking Arrangement,1 an online

 dating service where a “sugar daddy,” seeks to meet a “sugar baby.” At the time,

 Nason was married and had children. According to Nason, he accessed Seeking

 Arrangement because he believed his current marriage was difficult and he was

 “seeking . . . [another] relationship and . . . was willing to help someone financially.”

¶3 Nason met Defendant, who was twenty-eight years of age, through the website.

 The parties began a sexual relationship that lasted a couple of months, during which

 time Nason provided Defendant with financial compensation. Thereafter, Nason

 divorced his wife in 2013 and re-married in 2016.

¶4 On December 9, 2016, Nason received a LinkedIn message from Defendant,

 stating to let her know if he “would ever want [sic] grab lunch []or dinner . . . .” When

 Nason did not respond to Defendant’s initial message, Defendant sent two more

 messages to him over LinkedIn, and after acquiring his e-mail address, also e-mailed

 Seeking, originally called Seeking Arrangement, is a website where “ ‘sugar daddies’
 1

 and ‘sugar mommas’ could meet ‘sugar babies’ by honestly sharing expectations for a
 relationship upfront. . . . Seeking is about identifying what drives us and how we can live
 our best lives with someone by our side.” SEEKING, https://www.seeking.com/about-us (last
 visited March 25, 2022).
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 him. After the parties exchanged a few e-mails, Defendant informed Nason she was

 writing a book about her experience on Seeking Arrangement titled “The Sugar Lie.”

 According to Defendant, the book was a “memoir of . . . [her] experience on Seeking

 Arrangement[].” Nason was included in Defendant’s book because the two “pursued

 a paid, sexual, relationship from meeting on the site . . . .” Defendant explained she

 reached out to Nason, because there was “somebody interested in publishing” “The

 Sugar Lie,” and she “needed to reach out to everybody that . . . [she] had written about

 . . . .” After receiving this e-mail, Nason retained an attorney to review and assist

 him with the situation.

¶5 When Nason did not respond to the e-mail, Defendant sent two certified letters

 to his home address. Therein, Defendant again alerted Nason about her book and

 stated she “had to send a certified letter to your ex-wife, as statements you made in

 regard to her in your marriage are to be included.” In response, Defendant sent a

 letter to Nason asking, in relevant part, “[w]hat alternatives are available?”

¶6 Seventeen days later, Nason received an e-mail from Defendant’s new e-mail

 address, Thesugarlie@gmail.com. Defendant explained to Nason she had “reached

 out to your ex-wife twice” and because Defendant’s ex-wife had not responded, “the

 only person . . . [the ex-wife] will be able to come after for defamation . . . is you.”

 Regarding possible alternatives, Defendant stated that other gentlemen had asked

 her “to consider working out a confidentiality agreement . . . [and she was] open to
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 discussing that.” Defendant clarified that “all the other men who have asked me to

 consider a confidentiality agreement have made financial offers” ranging from

 $100,000.00 to $500,000.00.

¶7 Thereafter, Defendant began to e-mail Nason more frequently. Defendant

 pressured Nason to send his “offer” for a confidentially agreement by a certain

 deadline because she would soon decide “who’s offer, if any, I will be accepting.” When

 Nason failed to provide Defendant with an offer, Defendant e-mailed him stating that

 he would not receive a confidentiality agreement, and she would be “contacting the

 Dr. Phil show to see about getting on to promote . . . [her] book around the time it’s

 coming out. . . . [and] [t]here may be a chance they might reach out to you to appear

 on the show or make a comment.”

¶8 Notwithstanding Nason missing her initial deadline, Defendant continued to

 send messages to him through e-mail and LinkedIn in her effort to persuade him to

 make a monetary offer in exchange for a confidentiality agreement. After multiple

 messages without a response, Defendant e-mailed Nason on February 7, 2017, saying

 she would contact his current wife “for a statement since . . . [Nason is] going to have

 to tell her about the book and being on [s]eeking [a]rrangement[] . . . [and] since other

 women you met on there will probably come forward once the book is out.”

¶9 That same day, Nason met with Detective Matthew Grimsley with the

 Charlotte Mecklenburg Police Department. Nason provided Detective Grimsley with
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 copies of the e-mails exchanged with Defendant, and Detective Grimsley initiated an

 investigation of Defendant. Thereafter, Nason coordinated every communication

 between himself and Defendant with Detective Grimsley.

¶ 10 Meanwhile, Defendant continued to demand Nason make her an “offer” and

 pay for a confidentiality agreement. Acting under Detective Grimsley’s direction,

 Nason sent a message to Defendant with an offer of $250,000.00. Defendant accepted

 Nason’s offer and sent a confidentiality agreement to him. On February 9, 2017,

 Nason asked Defendant to meet him in a public place to deliver the money. Detective

 Grimsley intended to arrest Defendant at the meeting. However, Defendant refused

 to meet in person, demanding instead that the funds be sent to her by wire transfer.

 At no point did Nason wire any money to Defendant.

¶ 11 On February 16, 2017, Detective Grimsley arrested Defendant at her

 apartment in Charlotte, North Carolina. After Defendant’s arrest, the magistrate

 issued a search warrant, and Detective Grimsley, accompanied by other officers,

 returned to Defendant’s apartment to conduct a search. The officers’ search resulted

 in the seizure of confidentiality agreements between Defendant and multiple other

 men; however, the officers did not find any evidence of Defendant having written a

 book or being in contact with a publisher or Dr. Phil. On September 18, 2017,

 Defendant was indicted for extortion.

¶ 12 At trial, Defendant twice moved to dismiss the charges, but both motions were
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 denied. On September 24, 2019, the jury found Defendant guilty of extortion

 pursuant to N.C. Gen. Stat. § 14-118.4. That same day, the trial court sentenced

 Defendant to 16 to 29 months in confinement, suspended the sentence, and placed

 Defendant on 24 months of supervised probation. Defendant gave oral notice of

 appeal in open court.

 II. Discussion

 A. Defendant’s Constitutional Argument Was Preserved

¶ 13 At the outset, we address the State’s contention that Defendant’s argument on

 appeal was not preserved. Appellate Rule 10(a)(3) provides, “[i]n a criminal case, a

 defendant may not make insufficiency of the evidence to prove the crime charged the

 basis of an issue [later] presented on appeal unless a motion to dismiss the action, or

 for judgment as in case of nonsuit, is made at trial.” N.C.R. App. P. 10(a)(3). A

 properly made motion to dismiss for insufficiency of the evidence under Appellate

 Rule 10(a)(3) “preserves all insufficiency of the evidence issues for appellate review

 . . . .” State v. Golder, 374 N.C. 238, 246, 839 S.E.2d 782, 788 (2020) (emphasis added).

 Although Rule 10(a)(3) requires a defendant to make a motion, the defendant is not

 required to “assert a specific ground for a motion to dismiss for insufficiency of the

 evidence.” Id. at 245-46, 839 S.E.2d at 788 (citation omitted).

¶ 14 Here, the State argues since Defendant did not raise a constitutional argument

 in her motions to dismiss at the trial court, her argument is not preserved for appeal.
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 We disagree. Defendant was not required to state a specific ground for her motion to

 dismiss as a properly made motion to dismiss preserves all arguments based on

 insufficiency of the evidence. Id. Moreover, Defendant does not raise an entirely new

 issue on appeal, but rather argues the insufficiency of the evidence to support a

 conviction for extortion under her proposed Constitutional interpretation of N.C. Gen.

 Stat. § 14-118.4. We hold Defendant’s motion to dismiss preserved for appellate

 review all issues surrounding sufficiency of the evidence, including the Constitutional

 argument Defendant now raises before this Court.

 B. North Carolina’s Extortion Statute and The First Amendment

¶ 15 On appeal, Defendant argues the trial court erred by denying her motion to

 dismiss because under the First Amendment, N.C. Gen. Stat. § 14-118.4 must be

 construed to apply only to true threats. We disagree.

¶ 16 In support of her sole argument on appeal, Defendant relies heavily upon State

 v. Taylor where this court held the First Amendment requires a “true threat” reading

 to be applied to every anti-threat statute. State v. Taylor, 270 N.C. App. 514, 849

 S.E.2d 776 (2020), rev’d, 379 N.C. 589, 2021-NCSC0164. Therefore, we first

 determine whether the United States Constitution requires us to construe the North

 Carolina extortion statute’s “threat” language as a “true threat” before reaching the

 merits of Defendant’s sufficiency of the evidence argument.

¶ 17 On appeal, constitutional challenges and alleged violations are reviewed de
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 novo. State v. Shackelford, 264 N.C. App. 542, 551, 825 S.E.2d 689, 695 (2019). When

 an issue concerning the First Amendment arises, an appellate court must “ ‘make an

 independent examination of the whole record’ in order to make sure that ‘the

 judgment does not constitute a forbidden intrusion on the field of free expression.’ ”

 Bose Corp. v. Consumers Union, 466 U.S. 485, 499, 104 S. Ct. 1949, 1958, 80 L. Ed.

 2d 502, 515 (1984). E.g. State v. Taylor, 379 N.C. 589, 2021-NCSC-164 ¶ 44.

¶ 18 Any state statute that criminalizes speech “must be interpreted with the

 commands of the First Amendment clearly in mind.” Watts v. United States, 394 U.S.

 705, 707, 89 S. Ct. 1399, 1401, 22 L. Ed. 2d 664, 667. The importance of the First

 Amendment is paramount within our State, and the trial court must construe any

 statute that criminalizes speech in accordance with the First Amendment, even if the

 statute does not explicitly require it. See also State ex rel. North Carolina Milk Com.

 v. National Food Stores, Inc., 270 N.C. 323, 331, 154 S.E.2d 548, 554-55 (1967); State

 v. Strickland, 27 N.C. App. 40, 43, 217 S.E.2d 758, 760 (1975). The State bears “the

 burden of proving the speech it seeks to prohibit is unprotected.” Illinois ex rel.

 Madigan v. Telemarketing Assocs., 538 U.S. 600, 620, 123 S. Ct. 1829, 1841, 155 L.

 Ed. 2d 793, 810 n.9 (2003). Requiring the State, not the defendant, to prove whether

 disputed speech is unprotected speech ensures equity in court proceedings. See

 Speiser v. Randall, 357 U.S. 513, 526, 78 S. Ct. 1332, 1342, 2 L. Ed. 2d 1460, 1473

 (1958) (“The man who knows that he must bring forth proof and persuade another of
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 the lawfulness of his conduct necessarily must steer far wider of the unlawful zone

 than if the State must bear these burdens.”).

¶ 19 Recent cases from both our appellate courts and the federal courts identify an

 emerging trend in the law holding that the First Amendment requires all statutes

 governing threats be construed as a “true threat.” Watts, 394 U.S. at 707, 89 S. Ct.

 at 1401, 22 L. Ed. 2d at 667; United States v. Bagdasarian, 652 F.3d 1113, 1117 (9th

 Cir. 2011). Cf. Taylor, at ¶ 17-19. Watts v. United States is among the first cases to

 act as the catalyst for the “true threat” analysis requirement under the First

 Amendment. In Watts, the defendant was convicted for knowingly and willfully

 threatening the President of the United States after he stated at a political rally

 [t]hey always holler at us to get an education. And now I
 have already received my draft classification as 1-A and I
 have got to report for my physical this Monday coming. I
 am not going. If they ever make me carry a rifle the first
 man I want to get in my sights is L.B.J.

 Watts, 394 U.S. at 706, 89 S. Ct. at 1401, 22 L. Ed. 2d at 666. The U.S. Supreme

 Court overturned the conviction reasoning “[t]he language of the political arena . . .

 is often vituperative, abusive, and inexact. . . . Taken in context, and regarding the

 expressly conditional nature of the statement and the reaction of the listeners,” the

 defendant’s speech could not be construed as a true threat. Id. at 708, 89 S. Ct. at

 1401-02, 22 L. Ed. 2d. at 667. The holding in Watts established that the First

 Amendment “requires the [g]overnment to prove a true threat” exists when
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 prosecuting under a statute that criminalizes a pure form of speech. Id. at 708, 89 S.

 Ct. at 1401, 22 L. Ed. 2d at 667 (internal quotation marks omitted).

¶ 20 A “true threat” is an “objectively threatening statement communicated by a

 party which possess the subjective intent to threaten a listener or identifiable group.”

 State v. Taylor, 379 N.C. 589, 2021-NCSC-164, ¶ 34. See Virginia v. Black, 538 U.S.

 343, 359, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535, 552 (2003). The speaker of the

 true threat need not intend “to carry out the threat. Rather, a prohibition on true

 threats protects individuals from the fear of violence and from the disruption that

 fear engenders, in addition to protecting people from the possibility that the

 threatened violence will occur.” Id. at 360, 123 S. Ct. at 1548, 155 L. Ed. 2d at 552

 (cleaned up) (citation omitted).

¶ 21 Our Supreme Court applied the holding in Watts to a North Carolina anti-

 threat statute for the first time in State v. Taylor. In Taylor, the defendant posted

 comments on Facebook against court officers, referencing that one officer would be

 the “first to go[,]” and another officer could incur “death to her as well.” Taylor, at ¶

 2, 7. Ultimately, defendant was convicted under N.C. Gen. Stat. § 14-16.7(a) for

 knowingly and willfully making a threat to kill an officer of the court. Id. at ¶ 12-13.

 Defendant appealed, and, in reversing the trial court, this Court determined his

 conviction violated the true threat exception to the First Amendment. Id. at ¶ 3.

¶ 22 Subsequently, our Supreme Court affirmed the true threat exception to the
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 First Amendment, noting “[i]f defendant’s Facebook posts contained any true threats,

 then it is indisputable that he could be criminally punished . . . [but if the] posts did

 not contain any true threats, then his expression is shielded by the First

 Amendment.” Id. at ¶ 18. Our Supreme Court further stated “in defining and

 applying the true threats exception, a statute criminalizing speech must be

 interpreted with the commands of the First Amendment clearly in mind.” Id. at ¶ 24

 (internal quotation marks omitted) (quotation omitted). Ultimately, our Supreme

 Court held that the “Free Speech Clause of the First Amendment to the United States

 Constitution protect[s] defendant from being convicted solely for publishing the

 messages contained in his Facebook posts[.]” Id. at ¶ 4.

¶ 23 Here, Defendant urges this court to hold that the First Amendment of the

 United States Constitution requires we apply the “true threat” requirement to the

 terms within N.C. Gen. Stat. § 14-118.4 which sets forth the crime of Extortion.

 Whether N.C. Gen. Stat. § 14-118.4 falls under the “true threat” requirement of the

 First Amendment is a case of first impression. We decline to extend the “true threat”

 requirement to N.C. Gen. Stat. § 14-118.4 and hold the First Amendment does not

 require a threat under the terms of N.C. Gen. Stat. § 14-118.4 be a “true threat” to

 fall outside the protections of the First Amendment.

¶ 24 Generally, the First Amendment “prevents government from proscribing

 speech, . . . or even expressive conduct, . . . because of disapproval of the ideas
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 expressed.” R. A. V. v. St. Paul, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542, 120 L. Ed.

 2d 305, 317 (1992). Our society, however, permits content-based restrictions on

 speech that is “of such slight social value as a step to truth that any benefit that may

 be derived from them is clearly outweighed by the social interest in order and

 morality.” Id., 505 U.S. at 383, 112 S. Ct. at 2543, 120 L. Ed. 2d at 317 (quotation

 omitted). Categories of speech that may be restricted are those forms of speech

 intended and likely to “incite imminent lawless action, . . . obscenity, . . . defamation,

 . . . speech integral to criminal conduct, . . . so-called ‘fighting words,’ . . . child

 pornography, . . . fraud, . . . true threats, . . . and speech presenting some grave and

 imminent threat the government has the power to prevent . . . .” United States v.

 Alvarez, 567 U.S. 709, 717, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574, 587 (2012).

 Although the “true threat” requirement under the First Amendment has been applied

 to speech surrounding political hyperbole, Courts have hesitated to apply the “true

 threat” requirement to extortion. See also United States v. Quinn, 514 F.2d 1250,

 1268 (1975).

¶ 25 In the case before us, Defendant was convicted of extortion under Section 14-

 118.4. Extortion, though verbal, is a crime in and of itself. United States v. Marchetti,

 466 F.2d 1309, 1314, (4th Cir. 1972). Like robbery or murder, extortion “refers to

 criminal conduct that has a commonly understood meaning providing ample notice of

 the conduct falling within its ambit, limiting the potential for abuse in enforcement,
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 and ensuring that protected First Amendment speech is not within its reach.” United

 States v. Coss, 677 F.3d 278, 289 (6th Cir. 2012). Extortion is speech that is integral

 to criminal conduct, notwithstanding the content of the speech. It therefore falls

 within the category of unprotected speech, and necessarily may be restricted. See

 also Alvarez, 567 U.S. at 717, 132 S. Ct. at 2544, 183 L. Ed. 2d at 5887; Seals v. McBee,

 898 F.3d 587, 597 (2017) (noting “extortion” is “unprotected speech”). As the Fifth

 Circuit colorfully expressed in Quinn, “[i]t may categorically be stated that

 extortionate speech has no more constitutional protection than that uttered by a

 robber while ordering his victim to hand over the money, which is no protection at

 all.” United States v. Quinn, 514 F.2d 1250, 1268 (5th Cir. 1975). In United States v.

 Kirsch, the court found that true threat jury instructions should not be read in

 conjunction with extortion statutes, explaining “the extortion statutes at issue in this

 case already contain sufficient intent requirements. There is thus no need to further

 separate innocent conduct from wrongful conduct.” United States v. Kirsch, 151 F.

 Supp. 3d 311, 318 (W.D.N.Y. 2015).

¶ 26 We agree with the reasoning of the federal courts and hold that extortionate

 speech as prohibited by N.C. Gen. Stat. § 14-118.4 is not constitutionally protected

 speech. Thus, a “true threat” application and analysis to Section 14-118.4 is

 unmerited.

¶ 27 Notwithstanding our holding, a statute prohibiting extortionate speech may
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 itself be unconstitutional. Other courts in the federal circuit have addressed the

 validity of extortion statutes under the First Amendment. The Sixth Circuit in Coss

 held an extortion statute did not violate the First Amendment when the statute was

 sufficiently “cabined by its own wrongful threat and intent to extort requirements to

 survive constitutional muster.” United States v. Coss, 677 F.3d 278, 290 (6th Cir.

 2012). In United States v. Hutson, the Ninth Circuit held a statute was valid under

 the First Amendment

 [b]ecause the statute in the present case is limited to
 extortionate threats, it does not regulate speech relating to
 social or political conflict, where threats to engage in
 behavior that may be unlawful may nevertheless be part of
 the marketplace of ideas. . . . The ‘intent to extort’
 requirement of section 876 guarantees that the statute
 reaches only extortionate speech, which is undoubtedly
 within the government’s power to prohibit.

 843 F.2d 1232, 1235 (9th Cir. 1988).

¶ 28 As in Coss and Hutson, Section 14-118.4 contains the necessary intent and act

 requirements to pass constitutional muster. N.C. Gen. Stat. § 14-118.4 states: “Any

 person who threatens or communicates a threat or threats to another with the

 intention thereby wrongfully to obtain anything of value or any acquittance,

 advantage, or immunity is guilty of extortion and such person shall be punished as a

 Class F felon.” N.C. Gen. Stat. § 14-118.4 (2021). Per the plain language of Section

 14-118.4, the “intent” component of the section lies in the requirement that the
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 perpetrator must “communicate a threat or threats” while possessing the requisite

 intent to “wrongfully . . . obtain anything of value or any acquittance, advantage, or

 immunity . . . .” Id. The “act” component, in turn, rests in Section 14-118.4’s

 prohibition of the crime of extortion within our State and does not limit speech

 “relating to social or political conflict.” Hutson, 843 F.2d at 1235. Consequently, we

 hold Section 14-118.4 withstands First Amendment scrutiny as it prohibits only

 extortionate speech.

¶ 29 In this case, extensive evidence was presented to support Defendant’s

 conviction of extortion. Defendant sent Nason multiple e-mails and letters asserting

 that she was writing a book about their “sugar daddy” and “sugar baby” relationship.

 Defendant told Nason she sent certified letters to his ex-wife regarding statements

 he had made about her. When Nason did not immediately offer to “purchase” a

 confidentiality agreement, Defendant sent frequent e-mails demanding Nason

 submit a bid for a confidentiality agreement. Defendant threatened, absent a

 confidentiality agreement, Nason’s ex-wife could come after him for defamation, he

 may be asked to appear on the Dr. Phil show about the book, and his current wife

 would receive letters from Defendant. Under these facts, there was ample evidence

 to support the jury’s finding Defendant committed extortion under Section 14-118.4.

¶ 30 Finally, Defendant concludes her argument on appeal by alleging the evidence

 was insufficient to show she committed a “true threat.” As discussed supra, because
 STATE V. BOWEN

 2022-NCCOA-213

 Opinion of the Court

 we hold the crime of extortion does not require a “true threat” under the First

 Amendment, we need not address this argument.

 III. Conclusion

¶ 31 Following the U.S. Supreme Court and federal appellate opinions, we hold

 extortionate speech is criminal conduct in and of itself and, as such, is not

 constitutionally protected speech. Therefore, the First Amendment does not require

 that the “true threat” analysis be applied to N.C. Gen. Stat. § 14-118.4. Although

 statutes prohibiting extortionate speech may, as a whole, be unconstitutional, Section

 14-118.4 is narrowly tailored as to only restrict extortionate speech, and thus is valid

 under the First Amendment. The evidence in this case supported the jury’s finding

 that Defendant committed extortion in violation of Section 114-118.4. Accordingly,

 we discern no error in the judgment of the trial court.

 NO ERROR.

 Judges ZACHARY and CARPENTER concur.